OPINION
{¶ 1} Appellant Timothy King appeals from the July 6, 2005, Judgment Entry of the Fairfield County Court of Common Pleas, Juvenile Division, which granted permanent custody of appellant's minor child to the Fairfield County Children Services Board [hereinafter the Agency].
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant is the biological father of Monica King (d.o.b. 1/2/04). Monica's mother is Bridget Groen.[1] Groen and appellant have never been married but are in a current relationship.
 {¶ 3} The Agency first became involved with Groen when her other three minor children were permanently removed from her custody.[2] Based on the Agency's prior involvement, Monica King was placed in the emergency custody of the Agency on the day she was born via an ex parte order. On January 5, 2004, the Agency filed a dependency complaint. That same day, Monica was placed in the temporary custody of the agency.
 {¶ 4} On March 11, 2004, the Agency filed a case plan concerning Monica. Both appellant and Groen participated in the development of the case plan, agreed with the case plan and signed the case plan. The case plan identified the following concerns.
 {¶ 5} The first concern that the Agency had with appellant was his mental health. The Agency wanted appellant to have a psychological evaluation and follow all ensuing recommendations. In addition, the Agency wanted appellant to attend individual counseling on a consistent basis. Further, the agency wanted appellant to address the issues of his past sexual offense for which he was convicted of corruption of a minor and ordered to register as a sexual offender.
 {¶ 6} The next concern that the Agency had with appellant involved his parenting skills. The Agency wanted appellant to work with a parenting educator and then to demonstrate the parenting skills he learned whenever he was at visits with Monica. In addition, appellant was referred to Parenting Pathways, a parenting education program not affiliated with the Agency.
 {¶ 7} The final aspect of the case plan regarded dangerous acts and abuse to other children. Essentially, the Agency wanted appellant not to engage in any further criminal activity.
 {¶ 8} On April 1, 2004, Monica was found to be a dependent minor and was placed in the temporary custody of the Agency. Monica remained in the Agency's temporary custody throughout the proceedings.
 {¶ 9} On August 19, 2004, the Agency filed a motion for permanent custody. A trial was set for September 2, 2004. However, pursuant to a series of continuances, the matter was not heard until April 26, 2005. The following evidence was adduced at trial.
 {¶ 10} Appellant submitted to a psychological evaluation. The psychological evaluation indicated that appellant had a general lack of ability to function socially with the larger society. Appellant met the diagnostic criteria for anti-social personality disorder. In addition, evidence showed that appellant had limited cognitive functioning and could be described as experiencing borderline intellectual functioning.
 {¶ 11} The evaluation also showed that appellant had an extensive criminal history. Appellant reported that he had been convicted of corruption of a minor for which he served 18 months in prison and is a registered sex offender.[3] Appellant had a probation violation for which he served one year and a second probation violation which resulted in two years of incarceration. Appellant was convicted and sentenced to prison for breaking and entering. In that case, appellant served three years in prison, being released in February, 2002. Appellant reported that he was last charged with assault. He reported he was last incarcerated in November, 2003, for failing to report to his probation officer.
 {¶ 12} The evaluation further indicated that although appellant may have a genuine desire to do well in his life, due to his limited cognitive ability, lack of a social support system and his historical identification with the antisocial, criminal subculture, appellant frequently relapses into a primitive mode of functioning which results in explosive and violent outbursts. According to the evaluation, appellant has demonstrated significant difficulties in delaying immediate hedonistic needs, which has resulted in his history of inappropriate sexual behavior and his history of jumping from job to job and from relationship to relationship.
 {¶ 13} The psychological evaluation also indicated that appellant lacked a basic understanding of parenting skills. To assist appellant with his parenting skills, the Agency provided appellant with a parenting educator. Parenting information was demonstrated in a "hands on" modeling method, as well as through written material. However, the caseworker assigned to the case testified that the information was not significantly retained by appellant or utilized when visiting with Monica. Tr. 31. Appellant had not attended Parenting Pathways since May 4, 2004.
 {¶ 14} Testimony showed that the Agency facilitated appellant with a counselor at Mid-Ohio Psychological Services. From May 4, 2004, to April 4, 2005, 31 appointments were scheduled. However, of those 31 appointments, only seven were attended by appellant, 15 were not attended by appellant and nine were cancelled by Mid-Ohio Psychological Services. As of April 26, 2005, appellant had no future appointments pending.
 {¶ 15} Throughout the pendency of the case, appellant and Groen were permitted supervised visitation with Monica. Testimony showed that appellant and Groen were "pretty consistent" in their visitation with Monica. However, evidence showed that Monica was somewhat resistant in her reaction with appellant. Testimony showed that Monica is extremely bonded with her foster family and seems to be more at ease when interacting with her foster family as opposed to her interaction with appellant.
 {¶ 16} At the time of the trial, Monica was approximately 16 months old. She was developmentally on track. Although it was noted that she does have a large vocabulary for a child her age, testimony showed that she was unable to state an opinion as to with whom she would like to live or any other of her wishes concerning her custody.
 {¶ 17} Last, we note that a guardian ad litem [hereinafter GAL] was appointed. While the GAL did not testify, the GAL prepared and filed a report. The GAL made the following statements and recommendation in that report:
 {¶ 18} "The father lacks sufficient cognitive functioning to parent a child. Additionally the father manifested a basic lack of parenting skills that would permit him to parent his daughter in the psychological examination conducted in [sic] as part of the case plan in this case. Furthermore, the father has an extensive criminal history that `demonstrates a general lack of ability to function socially within the larger society'.
 {¶ 19} "The psychological examination indicates that the father is mildly mentally retarded; that he suffers from antisocial personality disorder; that he has a significant difficulty in delaying his hedonistic needs and thus engages in inappropriate sexual behavior. The conclusion of Dr. [H]edges was that Mr. King does not appear to possess the requisite skills and understanding necessary to effectively parent a child.
 {¶ 20} "The child is in need of a legally secure, permanent placement. The child cannot, and should not, be placed with either parent within a reasonable time. This GAL believes that both the mother and the father are incapable of developing the skills necessary to parent their child. Both parents' cognitive difficulties and their diagnoses [sic] psychological problems further limit their abilities to parent to such a degree that they are unlikely to develop sufficient parenting skills within a reasonable period. The father's particular criminal proclivities and his history of inappropriate sexual behavior make him even more unsuitable to parent a female child. Consequently, this GAL believes that a grant of permanent custody to the Fairfield County Children's Services Board will serve the best interests of Monica King." GAL Report, filed April 26, 2005.
 {¶ 21} Upon completion of the trial, the trial court concluded that Monica could not be placed with either of her parents within a reasonable time or should not be placed with either of her parents, pursuant to R.C. 2151.414(E)(1) and/or (16). In addition, the trial court made a finding that Monica had been in the temporary custody of the Agency for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999. Further, the trial court held that it was in the best interest of Monica to permanently terminate appellant's and Groen's parental rights and place Monica in the permanent custody of the Agency.
 {¶ 22} It is from that decision that appellant appeals, raising the following assignments of error:
 {¶ 23} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND BY CLEAR AND CONVINCING EVIDENCE THAT MONICA KING COULD NOT BE PLACED WITH EITHER OF HER PARENTS WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH EITHER OF HER PARENTS.
 {¶ 24} "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT IT WOULD BE IN THE BEST INTERESTS OF MONICA KING TO PERMANENTLY TERMINATE THE PARENTAL RIGHTS OF TIMOTHY KING AND PLACE MONICA KING IN THE PERMANENT CUSTODY OF FAIRFIELD COUNTY CHILDRENS SERVICE [SIC]."
 I {¶ 25} In the first assignment of error, appellant argues that the trial court erred and abused its discretion when it found by clear and convincing evidence that Monica King could not be placed with either of her parents within a reasonable time or should not be placed with either of her parents, pursuant to R.C.2151.414(B) and (E). Appellant contends that he completed his case plan. We disagree.
 {¶ 26} Ohio Revised Code Section 2151.414(B)(1), addresses under what circumstances a trial court may grant permanent custody. That statute provides as follows, in relevant part:
 {¶ 27} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing . . . by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 28} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
. . .
 {¶ 29} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period ending on or after March 18, 1999."
 {¶ 30} In this case, the trial court found that the child could not and should not be placed with either of her parents within a reasonable period of time. Upon review, we find no grounds for reversal.
 {¶ 31} Revised Code 2151.414(E) sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with a parent within a reasonable time. See R.C. 2151.414(B)(1)(a). If the court finds, by clear and convincing evidence, the existence of any one of the factors, "the court shall enter a finding that the child cannot be placed with [the] parent within a reasonable time or should not be placed with either parent". R.C. 2151.414(E). Thus, the existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. See In re:William S. (1996), 75 Ohio St.3d 95, 661 N.E.2d 738; In re:Hurlow (Sept. 21, 1998), Gallia App. No. 98 CA 6; In re:Butcher (Apr. 10, 1991), Athens App. No. 1470.
 {¶ 32} If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment.State v. Schiebel, 55 Ohio St.3d 71, 74, 564 N.E.2d 54. Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Id. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 33} In this case, the trial court found that R.C.2151.414(E) factors (1) and/or (16) applied. Revised Code 2151.414 Sections (E)(1) and (E)(16), state as follows:
 {¶ 34} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parent to remedy the problem that initially caused the child to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions that caused the child to be placed outside the child's home. In determining whether the parents have substantially remedied the conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 . . . {¶ 35} "(16) Any other factors the court considers relevant."
 {¶ 36} Upon review, we find that the trial court's finding is supported by competent, credible evidence. With respect to the appellant, the first aspect of the case plan concerned appellant's mental health. Appellant was to obtain a psychological exam, comply with any resulting recommendations, consistently attend individual counseling and address his past criminal, sexual offense.
 {¶ 37} Appellant obtained a psychological evaluation and began counseling. However, appellant attended only seven out of 22 possible appointments.[4] As of the date of the permanent custody trial, appellant had no future counseling appointments scheduled. Further, a review of the psychological evaluation indicates that appellant had been previously placed in the adult sex offender program at Mid-Ohio Psychological Services on multiple occasions, but had significant treatment non-compliance during the course of the year. (Plaintiffs Exhibit 6) Appellant is described as having significant difficulties internalizing basic coping skills and has been blatantly oppositional to treatment interventions.[5]
 {¶ 38} The next aspect of the case plan, with respect to appellant, involved parenting skills. The Agency wanted appellant to work with a parenting educator and then demonstrate the parenting skills he learned during his visits with Monica. In addition, appellant was referred to Parenting Pathways for parenting education.
 {¶ 39} The Agency provided appellant with a parenting educator who presented "hands-on" parenting information as well as written materials. However, testimony showed that appellant did not retain or utilize this information and no real improvements were made in his parenting skills. Appellant stopped attending Parenting Pathways after May 4, 2004.
 {¶ 40} The psychological evaluation addressed appellant's ability to parent. The evaluation indicated that appellant's limited ability and history of antisocial behavior significantly interfered with his ability to serve as an effective parent. In addition, appellant's prior criminal convictions and anger issues are factors which are relevant. The prognosis for adequately addressing the psychological issues which were interfering with his ability to effectively parent was "grim." Psych. Eval. pg. 10.
 {¶ 41} The final aspect of the case plan required appellant to refrain from dangerous acts or abusive behavior towards children, or, in more general terms, refrain from any further criminal acts. Appellant appears to have complied with this element of the case plan. There was no evidence presented of any recent criminal activity by appellant.
 {¶ 42} Further, after what appears to be an extensive review of the case, the guardian ad litem strongly recommended that permanent custody be granted to the Agency.
 {¶ 43} For the foregoing reasons, this court concludes that the trial court's finding that the children cannot be placed with appellant within a reasonable time is supported by competent credible evidence. While appellant may have complied with some aspects of the case plan, appellant did not successfully complete the case plan or remedy the problems identified by the Agency. See In re: Swisher, Tuscarawas App. No. 2003 APO 40028, 2003-Ohio-3747.
 {¶ 44} Accordingly, appellant's first assignment of error is overruled.
 II {¶ 45} In the second assignment of error, appellant contends that the trial court's finding that the best interests of the child would be served by granting permanent custody to the agency is error and an abuse of discretion. We disagree.
 {¶ 46} "(D) In determining the best interests of a child . . ., the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 47} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 48} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 49} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 50} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 51} "(5) Whether any of the factors in division (E)(7) to (11) of this section apply in relation to the parents and child."[6]
 {¶ 52} We find that the trial court's finding that it was in Monica's best interest for permanent custody to be granted to the Agency was supported by competent, credible sufficient evidence. Because Monica is only 16 months old, she was not able to express her own wishes. See R.C. 2151.412(D)(2). However, testimony showed that Monica is doing well in her foster home and is developmentally on track. She is well bonded with her foster family and, according to testimony, less bonded or comfortable with her parents. The interaction between Monica and her foster parents is more positive than the interaction between Monica and appellant. In fact, the testimony was that Monica was resistant to appellant during visits and appellant did not display appropriate parenting skills during visits. See R.C.2151.412(D)(1).
 {¶ 53} Last, we note that the GAL stated that the child needed a legally secure permanent placement and that such a placement could not be achieved without a grant of permanent custody to the Agency. See R.C. 2151.414(D)(4).
 {¶ 54} For the foregoing reasons, we find that the trial court's decision that it was in the child's best interest to terminate appellant's parental rights and grant permanent custody of the child to the Agency was supported by competent, credible evidence. Appellant's second assignment of error is overruled.
 {¶ 55} The judgment of the Fairfield County Court of Common Pleas, Juvenile Division, is affirmed.
By: Edwards, J., Wise, P.J. and Gwin, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Fairfield County Common Pleas Court, Juvenile Division, is affirmed. Costs assessed to appellant.
[1] Bridget Groen has also appealed from the grant of permanent custody. See Fairfield County App. No. 05CA77.
[2] Groen did not contest the Agency's motion for permanent custody of those other three children. The general issues involved in that case were Groen's cognitive abilities, parenting skills and relationship choices.
[3] During appellant's psychological evaluation, appellant reported that when he was approximately 20 years of age, he was sexually involved with a 16 year old girl. The psychological evaluation also indicated that "[p]rior records suggest that he was charged with a sexual offense as a juvenile." Appellant acknowledged that he was placed in detention on several occasions as a juvenile. Psych. Eval., pg. 3.
[4] A total of 31 appointments had been scheduled but the counseling agency cancelled nine of those appointments.
[5] Appellant acknowledged that essentially "anything" causes him to become angry and causes him to express his anger.
[6] Divisions (E)(7) to (11) of R.C. 2151.414 state as follows:
"(7) The parent has been convicted of or pleaded guilty to [certain enumerated offenses]. . . .
"(8) The parent has repeatedly withheld medical treatment or food from the child. . . .
"(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
"(10) The parent has abandoned the child.
"(11) The parent has had parental rights involuntarily terminated . . . with respect to a sibling of the child."